**Electronically Filed
Intermediate Court of Appeals
29826
17-DEC-2010
11:10 AM**

NO. 29826

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


FREDERICK JOHN HARRIS, Petitioner-Appellant,
v.
THOMAS R. KELLER, ADMINISTRATIVE DIRECTOR
OF THE COURTS, STATE OF HAWAII, Respondent-Appellee


APPEAL FROM THE DISTRICT COURT OF THE THIRD CIRCUIT
NORTH AND SOUTH KONA DIVISION
(CASE NO. 3RC09-1-0102K)


SUMMARY DISPOSITION ORDER
(By: Nakamura, C.J., Foley and Fujise, JJ.)

In a secondary appeal, Petitioner-Appellant pro se
Frederick John Harris (Harris) appeals from the Decision and
Order Affirming Administrative Revocation filed on March 19, 2009
in the District Court of the Third Circuit, North and South Kona
Division (district court).[1]

Harris's opening and reply briefs do not follow the
requirements of Hawai'i Rules of Appellate Procedure (HRAP) Rule
28(b) to provide, among other things, a concise statement of the
case and a concise statement of the points of error. Lack of
substantial compliance with HRAP Rule 28 is grounds for

---

[1] The Honorable Melvin H. Fujino presided.

dismissal. HRAP Rule 30 ("When the brief of an appellant is otherwise not in conformity with these rules, the appeal may be dismissed[.]").

However, we recognize that the Hawaiʻi Supreme Court "has consistently adhered to the policy of affording litigants the opportunity to have their cases heard on the merits, where possible." Bettencourt v. Bettencourt, 80 Hawaiʻi 225, 230, 909 P.2d 553, 558 (1995). Therefore, this case is reviewed for any meritorious claims.

It appears that Harris is raising two issues on appeal in regards to his challenge of the one-year administrative revocation of his driver's license: (1) whether his refusal to submit to a breath and/or blood test was a valid refusal when Officer Tominaga (Officer Tominaga), the arresting officer, allegedly gave him a Miranda warning (identifying a right to consult an attorney) while at the same time informing him that he had no right to consult an attorney before deciding whether or not to submit to any test; and (2) whether the Administrative Driver's License Revocation Office (ADLRO) failed to properly subpoena Officer Tominaga, thus denying Harris due process.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant statutory and case law, we conclude that Harris's appeal is without merit.

**A. The district court did not err when it affirmed the administrative revocation of Harris's driver's license.**

Under Hawaii Revised Statutes (HRS) § 291E-38(e) (2007 Repl.), after an administrative hearing to review the decision to revoke a person's license, the director shall affirm the administrative revocation if the director determines that there

2

was (1) <u>reasonable suspicion</u> to stop the motor vehicle; (2) <u>probable cause</u> to believe the respondent operated the vehicle while under the influence of an intoxicant; and (3) <u>proof by a preponderance of the evidence</u> that (a) the respondent operated the vehicle while under the influence of an intoxicant; or (b) the respondent operated the vehicle and, <u>after being informed of the sanctions, refused to submit to a breath, blood, or urine test</u>.

In Officer Tominaga's sworn statement, he found <u>reasonable suspicion</u> to stop Harris when "[w]hile on traffic enforcement[, I] observed the vehicle [Harris] was operating to cross the double solid yellow line and travel in the oncoming lane of travel. Vehicle speed was measured at 71 mph in a 55 mph zone." Officer Tominaga found <u>probable cause</u> to believe Harris was operating a vehicle under the influence of an intoxicant based on Harris's physical indicators of intoxication and inability to perform administered field sobriety tests:

> [Harris] (lone occupant in vehicle) displayed red, glassy eyes, strong odor of an intoxicating beverage emanated from facial area. Could not perform HGN (kept moving head), unable to perform WAT (unable to stay in Instructional Stance), unable to perform OLS. Could not understand instructions for finger to nose.

Officer Tominaga also indicated in his sworn statement that he informed Harris of the consequences of refusing to be tested for alcohol concentration.[2]

---

[2] On the form, Officer Tominaga swore that he read the following to Harris:

1. Any person who operates a vehicle upon a public way, street, road, or highway or on or in the waters of the State shall be deemed to have given consent to a test or tests of his or her breath, blood, or urine, for the purpose of determining alcohol concentration or drug content as applicable.

2. <u>You are not entitled to an attorney before you submit to any test or tests to determine your alcohol and/or drug content.</u>

(continued...)

Following his arrest, Harris signed two implied consent for testing forms. On the one-page "Use of Intoxicants While Operating a Vehicle Implied Consent for Testing" form, Harris checked off that he "refused to take either a breath test or a blood test" and signed the acknowledgment statement. Harris also signed a three-page form, "Operating a Vehicle Under the Influence of an Intoxicant-Implied Consent LIQUOR," in which was written under Part F.1. on the second page that

> [i]f you refuse to take any tests and your driving record shows no prior alcohol or drug enforcement contacts during the five years preceding the date of arrest, your driving privilege will be revoked for one year, whereas if you choose to take a test and fail it, your driving privileges will be revoked for a period of three months up to one year.

(Emphases added.)

In the January 27, 2009 Findings of Fact, Conclusions of Law, and Decision (FOF/COL/Decision), the Hearing Officer determined that the sworn statement of Officer Tominaga was credible, reliable, and trustworthy. The Hearing Officer concluded that Officer Tominaga informed Harris of his choices to take a breath test, blood test, both tests, or to refuse any test, and what the sanctions for refusal were and that Harris acknowledged the consent forms with his signature.

Harris argues on appeal that Officer Tominaga read him his Miranda rights and then told him his driver's license would be rescinded for a year if he refused to consent to testing. Harris claims he was told he had a right to consult counsel and,

---

[2](...continued)
3. You may refuse to submit to a breath or blood test, or both, for the purpose of determining alcohol concentration and/or a blood or urine test, or both, for the purpose of determining drug content. If you refuse to submit to a breath or blood test, or both, none shall be given, except as required in [HRS §] 291E-21, but you shall be subject to the procedures and sanctions under [HRS] chapter 291E, part III, or [§] 291E-65 as applicable.

(Emphases added.)

4

at the same time, that he had no right to consult an attorney prior to choosing to take or refuse all or any of the tests, and therefore, due to his confusion, there was no "refusal" under Hawaii implied consent law.

Harris had no right to a Miranda warning before submitting to a breath or blood test because he had no right to consult with an attorney. State v. Taniguchi, 72 Haw. 235, 238, 815 P.2d 24, 26 (1991) (citing State v. Severino, 56 Haw. 378, 380-81, 537 P.2d 1187, 1189 (1975)). Even if Harris had been given a Miranda warning, it was his burden to establish that he was confused as to his right to consult an attorney. "[T]he burden is upon the defendant to establish that he was confused as to his right to consult with an attorney, and this confusion led to his refusal of any chemical tests." Taniguchi, 72 Haw. at 238-39, 815 P.2d at 26.

The Hawai'i Supreme Court has also held that "where an arrested person asserts a belief that he is entitled to consult with counsel before submitting to a breath or blood test under Hawaii's implied consent law, the police officer must explain that the person has no right to consult with counsel under Hawaii law." Id. at 239, 815 P.2d at 26 (emphasis added).

In the instant case, there is no evidence Harris asserted a belief at the time of his arrest that he was entitled to consult with counsel. Even if he did assert such a belief, Officer Tominaga's sworn statement indicates Harris was informed that no such entitlement existed and Harris signed the form, acknowledging that he had been "informed of the information in this report."

Therefore, we conclude that the district court, in its review of the administrative record, did not err in affirming the FOF/COL/Decision that found Harris operated the vehicle under the influence of an intoxicant, was mandated to take an alcohol

concentration test, was informed of the choice of taking one of the applicable tests or refusing the tests, refused any of the applicable tests, and was not confused regarding his right to consult with counsel.

> B. **The district court did not err when it affirmed the administrative review finding that the subpoena of Officer Tominaga was timely issued and without delay on the part of ADLRO.**

Harris contends ADLRO purposefully and "neglectfully and/or willfully <u>withheld</u> from the accused party ADLRO's timely issuance of a necessary subpoena <u>timely requested by [Harris]</u>," thus denying Harris the opportunity to "confront and examine" Officer Tominaga. (Emphases in original.) He argues that the subpoena request was mailed by him from the Island of Hawai'i via the U.S. Postal Service on January 15, 2009 and was received by ADLRO on January 16, 2009, and the subpoena should have been mailed out on January 16, 2009 because the "delivery of business and residential mail was timely and normal" on January 16, 2009.

That there was mail service on January 16, 2009 is undisputed but irrelevant. On Friday, January 16, 2009, all state offices were closed due to a civil emergency (a high wind advisory was in effect). Monday, January 19, 2009, was a federal holiday with no mail service. Therefore, a letter mailed on Thursday, January 15, 2009, would not have been received by an open state office until Tuesday, January 20, 2009. According to the record, Harris's "actual request and subpoena documents" were received January 20, 2009 and the subpoena was mailed to Harris that afternoon.

The Hearing Officer found that Harris could have obtained the subpoena through other means, including via attorney Paul J. Cunney, who was representing Harris during the period of January 14 through January 20, 2009 and whose office was in Honolulu.

The transcript of the January 22, 2009 administrative hearing reveals that Harris was given numerous opportunities to continue the hearing until the arresting officer could be served, but he declined to request a continuance.

We conclude the district court did not err in affirming the administrative revocation of Harris's driver's license, where the Hearing Officer found that ADLRO had timely issued a subpoena and where Harris waived his right to examine Officer Tominaga when he declined to continue the hearing.

Therefore,

The Decision and Order Affirming Administrative Revocation filed March 19, 2009 in the District Court of the Third Circuit, North and South Kona Division, is affirmed.

DATED:  Honolulu, Hawaiʻi, December 17, 2010.

On the briefs:

Frederick J. Harris,
Petitioner-Appellant pro se.

Dorothy Sellers,
Solicitor General,
Kimberly Tsumoto Guidry,
Deputy Solicitor General,
for Respondent-Appellee.

Chief Judge

Associate Judge

Associate Judge

7